UNITED STATES DISTRICT COURT

**18        1161**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _249 W. Mowry St, Chester, Pa., 19013_

Address of Defendant: _302 E. 5th St, Chester, Pa., 19013_

Place of Accident, Incident or Transaction: _Chester Community Charter School, Chester, Pa._
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes☑ No☐

Does this case involve multidistrict litigation possibilities?        Yes☐ No☑
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐ No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐ No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐ No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐ No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _Erma McMillan_, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: _March 16, 2018_        _Erma McMillan_
                                          Pro Se Plaintiff

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

_Erma McMillan_

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _March 16, 2018_        _Erma McMillan_
                                          Pro Se Plaintiff

CIV. 609 (5/2012)

MAR 16 2018

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

*Erma McMillan et. al.*                     CIVIL ACTION

*Chester Comm. Charter School*
         *v.*
         *et al.*                     NO. **18     1161**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (✓)

March 16, 2018    *Erma McMill*
**Date**                     **Pro Se Plaintiff**

(484) 487-1941    N/A                     N/A
**Telephone**          **FAX Number**                     **E-Mail Address**

(Civ. 660) 10/02

MAR 16 2018

# In The United States District Court
# Eastern District of Pennsylvania

Civil Action No. **18    1161**

*Jury Trial Demand*

Erma McMillan, J.M. #1 and J.M.#2
Plaintiff(s)

Vs.

Chester Community Charter School
Chester Community Charter School Board & Administration
Durham Transportation Department
Pennsylvania  Department of Education
Pennsylvania Dpt. of  Human Service & Children and Youth Services
of Delaware County
City of Chester
Chester Police Department
Defendant(s)

## *Civil Rights Complaint*

1.    This civil rights complaint for damages and declaratory judgment and injunctive relief, brought pursuant to 42 U.S.C. § 1983.

## *Jurisdiction and Venue*

2.    This court has subject jurisdiction over this matter in accordance  U.S.C. 28 U.S.C. § 1331 and venue is invoked pursuant to 28 U.S.C § 1391 (b) 1-2.

*Erma McMillan*
Erma McMillan, Pro Se
249 West Mowry Street
Chester, Pa. 19013
(484) 487-1941

## *Parties*

3.   Erma McMillan, hereinafter, referred to as the Plaintiff is a citizen of Chester, Pennsylvania, and situated at 249  West Mowry Street Chester Pa. 19013. Ph. (484) 487-1941

4.   Chester Community Charter School and  Chester Community Charter School Board & Administration situated at is situated at 302 East 5th Street Chester Pa. 19013. (610) 447-0400

5.   Pennsylvania  Department of Education, situated at 333 Market Street 7th, floor Harrisburg, Pa.  17126-0333

6.   Pennsylvania Dpt. of  Human Service & Children and Youth Services of Delaware County P.O. Box 2675, Harrisburg PA 17105-2675.

7.    City of  Chester  and  Chester Police Department is situated at 1 Fourth Street Chester, Pa. 19013 (610) 447-7700.

8.    Durham Transportation Department  provides transportation for   Chester Community Charter School Board & Administration situated at is situated at 302 East 5th Street Chester Pa. 19013. (610) 447-0400

## Count One

9.   The Defendant's Chester Community Charter School and Bernice Sudler is charged with excessive force and assault upon six year old J.M.#1 contrary to his   Amendment Rights to the U.S. Constitution.

## Count Two

10.   The Defendant's Chester Community Charter School and Bernice Sudler is charged with recklessly and negligently endangering the welfare of a child, namely J.M.#1

## Count Three

11.  The Defendant's Chester Community Charter School and Bernice Sudler is charge with unlawful restraint.

## Count Four

12.   The Defendant's Chester Community Charter School and Ms. Smith is charged with aiding and abetting or otherwise acting in concert with Bernice Sudler, by proximate cause in the knowing failure to intervene or deter the acts and omissions of Bernice Sudler concerning the assault and beating of  J.M.#1

## Count Five

13. The Defendant's David Clark, Chester Community Charter School and Jahnita Robinson is charged with exercising and maintaining unconstitutional procedures, policies and regulations governing right to a fair tribunal, constitutional right to redress of grievances, and the constitutional right to be free from unlawful arbitrary suspensions and filing false reports and disciplinary infractions.

## Count Six

14.   The Defendant's Chester Community Charter School and Bernice Sudler is charge with reckless and negligent disregard by slamming J.M.#1   arm in a door.

## Count Seven

15.   The Defendant's David Clark, Chester Community Charter School and Jahnita Robinson is charged with negligence, contributory negligence, reckless and careless disregard to the welfare and safety of J.M.#1 by the unconstitutional failure to operate and maintain a safe environment, free of exposed mouse traps and assaultive and hostile atmospheres.

## Count Eight

16.   The Defendant's Chester Community Charter School and Janita Robinson, Burnice Sudler, Chester Community Charter School Medical Dept. and the School's "( Nurse )" is charged with exercising and maintaining unconstitutional procedure, policies and regulations regarding the lack of medical treatment, negligence and deliberate indifference to serious medical needs of J.M.#1.

## Count Nine

17.   The Defendant's D. David Clark, Chester Community Charter School and Janita Robinson, Principal Mills, Ms. Ferguson, Ms. Devy, Bernice Sudler, is charged with the unconstitutional Suspension(s) of JM.#1 and J.M.#2 on Four Consecutive Occasions

## Count Ten

18.   The Defendant's Dr. Clark David and Chester Community Charter School Board and Administration, Jahnita Robinson and Ms. Ferguson is charged with unlawful and unconstitutional suspension of J.M.#1 and for filing an erroneous charge of alleged possession of a weapon.

## Count Eleven

19.   The Defendant's Dr. David Clark and Chester Community Charter School Board and Administration, Jahnita Robinson and Ms. Ferguson is charged with depriving J.M.1# and J.M.#2 a school trip to the Philadelphia Zoo, without valid justification and in a unconstitutional and discriminatory fashion.

## Count Twelve

20.     The Defendant's  Dr. David Clark  and Chester Community Charter School Board and Administration, Jahnita Robinson Principal Mills, and Durham Transportation Department is charged with unlawful detention(s) of both J.M.#1 and J.M.#2 on five separate occasions and the unlawful acts and omissions of bus driver(s) and bus-aid(s) and other unknown school personnel.

## Count Thirteen

21.     The Defendant's  Dr. David Clark  and Chester Community Charter School Board and Administration, Jahnita Robinson and Ms. Ferguson and Ms. Fay, is charged with the knowing failure to intervene in the continued "bullying" of both J.M.#1 and J.M.#2 and the deliberate breach of Pennsylvania's no bullying legislation and the ratification, maintenance, observation and exercising of unconstitutional bullying procedures, policy, customs and regulations.

## Count Fourteen

22.     The Defendant's Dr. David Clark, Chester Community Charter School Board and Administration, Ms. Jahnita Robinson, George Regals, Ms. Shannon Fay, Ms. Ruth, Ms. Devy, Daniell Wijtyk, Jessica Conley, Ms. Ferguson, failure to condition and educate J.M.#1 and J.M.#2 in accordance with it's intermediate and special educational program, mismanagement and misappropriation of federal funding delegated towards the aforesaid programs.

## Count Fifteen

23.     The Defendant's Dr. David Clark, Chester Community Charter School Board and Administration, Admissions Director, Admissions Personnel, Jahnita Robinson, are charged with exercising and maintaining unconstitutional procedures, policies, customs and regulations and discriminatory practices in the unconstitutional denial of the admission of J.M.#1 and J.M#2.to Chester Community Charter School – East Campus

## Count Sixteen

24.  The Defendant's Pennsylvania Department of Education and Carol Cuntz, is charged with   exercising and maintaining unconstitutional procedures, policies, customs and regulations relative to the department's continuing breach of duty and obligation to intervene, in providing safe schools, or otherwise exercise a duty of reasonable care of special education students, (such as J.M.#1 and J.M.#2) who has been abused and victimized by educators within the Commonwealth of Pennsylvania.

## Count Seventeen

25.  The Defendant's   City of Chester and Chester's Police Department is charged with  exercising and maintaining unconstitutional procedures, policies, customs and regulations relative to the department's discriminatory practices in the unconstitutional failure to intervene, deter, or otherwise exercise a duty of reasonable care for children or citizens within the City of Chester (such as J.M.#1 and J.M.#2), who has been abused and victimized by educators  with the region of Chester, Pennsylvania.

## Count Eighteen

26.  The Defendant's  Pennsylvania Department of Human Service and Children and Youth Services Delaware County is charged with exercising and maintaining unconstitutional procedures, policies, customs and regulations relative to the department's discriminatory practices in the unconstitutional failure to intervene, deter, or otherwise exercise a duty of reasonable care of special education students and children such as J.M.#1 And J.M.#2, who has been abused or victimized by educators throughout the the Commonwealth of Pennsylvania and Delaware County.

## Statement of Acts

27.   This is a civil rights action brought in accordance with 42 U.S.C. § 1983, underlying civil and constitutional deprivations, excessive force, a brutal beating and severe injuries inflicted upon six year old J.M.#1 (a special education student at the hands of the Defendant Bernice Sudler, a (Dean) at Chester Community Charter School. The aforesaid school and it's designated faculty has a  historic pattern of physical and psychological abuse, willful and reckless misconduct which is constantly and covertly being perpetrated upon innocent children in the school system. This suit speaks only to just a fragment of the continued series of diabolical treatment being exacted upon our children in the most barbarous manner, which is highly unacceptable and inexcusable in this millennium and in this society.

## Count One and Two

### Excessive Force and  Brutal Beating of Six Year Old J.M. #1

28.   On 11/8/17, Bernice Sudler, hereinafter, referred to as the "Defendant," willfully, maliciously and repeatedly assaulted and used excessive force upon six year old "J. M.#1" by persistently beating him all about the head, back and body with a hard pillow and aggressively pushing and slinging him around a class room termed as the so called "peace-room," causing him to slam into, and

fall against a waste basket - overturning it, which caused a desk to overturn from the impact, and thereafter, Sudler continued her diabolic onslaught in a deranged frenzy, throwing J.M.#1 into furniture all about the peace-room.

## Count Thee

### Unlawful Restraint

29.    During that time, J.M.#1 feared additional blows and percussion's, he therefore, attempted to free himself from the brutal flurry and tried to remove himself from that setting, but Ms. Sudler obstructed and impeded his attempts by blocking and hindering his mobility and by pushing him back and continuously hitting and assaulting him. (J.M.#1 indicated that Sudler hit him approximately five times and threw pillows and other objects at him as well).

## Count Four

### Negligent and Willful Failure to Intervene, Aiding and Abetting by Proximate Cause.

30.    While the cruel and barbarous fray played out upon J.M.#1, he indicated that the (Peace-room teacher ) – "Ms. Smith" was present witnessing the incident, but virtually failed to intervene, and merely stated to Sudler, "stop hitting him," but in the same token, elected to look the other way by failure to stop, hamper, deter or attempt to physically preventing Sudler from continuing her diabolical misconduct upon a defenseless minor child.

## Count Five
### Deprivation of Constitutional Right to Fair Tribunal, unconstitutional Suspension, Deprivation to Due Process and Constitutional Right to Redress of Grievances

31. Immediately after the brutal beating, J.M.#1 was taken to Principal Robinson's office where he appeared crying, screaming and visually shaken up by the dramatic experience. At this point, J.M #1 attempted to explain what had occurred and how Sudler brutally assaulted and manhandle him, but he indicated that The Defendant Robinson, (School Principal), stated that such an incident did not occur, and willfully failed to take precautionary measures to ascertain whether was or was not assaulted or to ensure that such action did not, in fact occur or that such actions will not befall J.M.#1 in the future. Yet on the contrary, Robinson issued a three day suspension to J.M#1 without investigation, without a due process hearing or without a fair tribunal being accorded to him, and thus, attributing prejudice and bias inferences by hastily siding with her designated subordinate Ms. Sudler, and thereby, attempting to silence J.M.#1 from pursuing and relaying his contention and grievances concerning Sudler's misconduct and assaultive behavior. In the same token, J.M.#1 was deprived of his right to a fair tribunal, and his constitutional right to redress of grievances, and the constitutional right to be free from unlawful and arbitrary suspensions and the subject of filing false reports and disciplinary

infractions.    Sudler filed false disciplinary reports against J.M.#1 as a deceptive strategy to conceal her misconduct as to the events wherein J.M#1 was viciously beat and manhandled for virtually nothing or any wrong doing.

32.    When J.M.#1 perceived that the three adults mentioned herein, (Sudler, Smith and Robinson), were highly indifferent to his present condition,  actually denigrating and dehumanizing him, he simply wanted out.  At which point he attempted to leave so that he may proceed back to class, seeking a safe-haven or refuge.

## Count Six
### Reckless and Negligent Disregard by Slamming J.M.#1's Arm in a Door. At Chester Community Charter School

33.    However, he was again met with stagnating resistance by Sudler, who not only impeded and obstructed his path to the doorway, but as he managed to by-pass Sudler, and while in the threshold of the door, Sudler slammed his arm up in the door causing him additional pain and suffering, as well as mental and emotional distress. In the same sphere, Sudler made careless and arrogantly remarks attempted to thwart off responsibility for her actions by refusing to acknowledge her role in causing such injuries. Sudler spoke bitter, nasty and recklessly regarding the incident, with no expressed sympathy, remorse or regret, simply put, (emotionless).

34.    Fortunately, during this latter portion of the aforementioned episode, the

Plaintiff was contacted by both, Sudler and Robinson and was told that J.M.#1

was in Principal Robinson's office hysterically crying and that he supposedly

hit Sudler at some point. Nevertheless, the Plaintiff could hear J.M.#1 crying

extremely loud and unmercifully, to the degree that the could hear extreme

exhaustion in his pitch and despair in his voice.

35.    While on the phone (via) live speaker, the Plaintiff proceeded with

attempting to calm  J.M.#1 down, but instead, all he wanted was to get away

from those in whom he perceived was out to harm him, namely, Sudler, and

Robinson who refused to accept his contention that Sudler had abused him.

### Count Seben

#### Negligent Reckless and Careless Disregard to the Welfare and Safety of J.M.#1 and J.M.#2, by the Unconstitutional Failure to Operate and Maintain a Safe Environment, Free from Exposed Mouse Traps, Assaultibe and Hostile Atmospheres.

36.    Notably, it is paramount to pointed out that, as (J.M.#1) found that he had

no choice but total confinement within the office of the principal, he attempted

to isolate and shelter himself from  further  abuse  by  hiding  under  the

principal's desk,  but was told that he must come from under the desk,  in which

he complied and sat on the floor near the door – with his hands behind his back,

where a live mouse trap slammed down on his finger causing even additional pain and suffering ***inter alia,*** mental and emotional distress.

37.    Apparently, the school is plagued with a rodent crisis and possibly other sanitarian complications – where live mouse traps are in plain view and within the reach of children, causing a problematic and unsafe environment in which J.M.#1 was severely injured by an exposed mouse trap that the school and Principal knew or should have known that the mouse trap was within the reach of children and a danger to safety and welfare of innocent children in general.

38.    An exceedingly cruel and terrifying deal for a 6 year old child. (How Disturbing and diabolical is such inhuman treatment exacted by educator's of our society and community upon innocent children).

### Count Eight
### Deliberate Indifference To Serious Medical Needs

39.    In the instant matter, although J.M.#1 suffered having his arm slammed in a door and thereafter, a mouse trap slammed down on his finger. However, the injuries to his arm was never examined nor treated to any degree, nor was he examined for the brutal beating, his arm, and the mouse trap incidents, leaving him stricken with severe pain, mental and emotional distress.

40.    In reference to the mouse trap slamming down on J.M#1's, finger the

Defendant Principal Robinson indicated that J.M.#1 was being taken to the nurses station for examination or appropriate treatment (via) Ms. Sudler. However, within two minutes J.M.#1 was returned back to the principal's office – wherein both Sudler and Robinson claims he refused treatment. But when the Plaintiff inquired of J.M.#1 as to what took place, he indicated that he complied with the examination and that the nurse claimed that nothing was wrong with the finger.

41.    At this point, the Plaintiff instructed J.M.#1 to return back to the nurse as he was crying and stating that both his arm and finger was hurting and that his finger had a visible blood-clot. Upon returning J.M.#1 indicated again, that the Nurse stated that nothing was wrong and issued ice for his finger. There was no precautionary care meted out for possible breaks and or fractures of both, the arm and finger, no x-rays, sling, splint aspirin or the appropriate pain medication issued, nor was there referrals to local hospitals or facilities capable of accommodating J.M.#1 medical needs. The nurse and staff also failed to communicate with the Plaintiff regarding any options to the Plaintiff's disposal - touching the scope of J.M.#1 medical treatment. Accordingly, the designated medical personnel in this matter was highly indifferent to the serious medical needs, J.M.#1 and attributed misdiagnosis, negligence, and malpractice ***actus***

_**reus.**_

42.    In addition, both Robinson and Sudler were of the knowing failure to have ensured that J.M.#1 received the appropriate treatment to his arm and finger. Dr. David Clark and Chester Community Charter School are the proximate of the damages and injuries sustained and inflicted upon J.M.#1, by the failure to adequately train and supervise designated medical personnel and subordinate's in general.

43.    The Defendant's breached a duty of reasonable care and failed to exercise precautionary measures and safeguards in the deliberate in difference to the serious medical needs of J.M.#1, and thereby, depriving the Plaintiff of his fifth and fourteenth amendment due process, and inflict mental and emotional distress as well as unwanton pain and suffering the Plaintiff by and through such acts and omissions.

## Count Nine
### Unconstitutional Suspension(s) of J.M. #1 and J.M.#2

44. In the final analysis of the entire matter, J.M.#1 was issued a three days suspension from school for allegedly hitting Bernice Sudler. When in actuality, Sudler persistently brutalized, mangled and tossed J.M.#1 to and from throughout the peace-room in a bitter rage, as if J.M.#1 was a rag-doll, and literally mopped the class room with him without just cause or provocation. In

reality, the defenseless six year old had just about had enough with the diabolical tyranny of the the Defendant and felt it was necessary to run for cover or get away from her in order to sustain his life, freedom and welfare, therefore, he executed instinct by defending himself against barrage of blows perpetrated upon him.    Accordingly, all humanity is endued with certain unalienable rights, one of which is the right to defend one's person.

45.    Because Sudler felt that she had a "sweet vict" *i.e.* easy victim, to her surprise and dismay, J.M.#1 was compelled to do what he deemed necessary in order to combat such ugly whelms emanating from Sudler. Sudler didn't like it, so she continued to brutalize J.M.#1 – hoping to beat him into submission. (End of Story).  No marvel, even where Sudler shut J.M.#1 arm up in a door, she was arrogant, in denial and blatantly refused to acknowledge her role in that incident and/or that it was an accident or mistake – thus refusing to accept responsibility to her actions or mistakes.[1]

## Count Ten
### Unlawful Suspension and Erroneous Charge of Possession of Weapon Lodged Against J.M.#1

46.    The Defendant's Dr. David Clark and Chester Community Charter School Board and Administration, Jahnita Robinson and Ms. Ferguson, unlawfully and

---

1    In previous times both J.M.#1 and J.M.#2 was illegally suspended and written up on false disciplinary actions for defending themselves against known bullies and other student's who  assailed and beat upon them.

unconstitutional suspended J.M.#1 for an erroneous possession of a weapon offense contrary to the school's code of conduct and contrary to promulgated legislation.

47.    On September 19th, 2017, J.M.#1 was erroneously charged and suspended for an incident wherein his teacher gave him a pair of scissors and instructed him to get in line, at which point he incidentally and accidentally cut a female student's hair with a pair of scissors issued to him for a proposed study project. J.M.#1 explained that he was playing in an experimental way, and accidentally clipped a piece of the other child's hair.

48.    Although, Principal Robinson, Ms. Ferguson acknowledged that J. M. #1 accidentally clipped the other student's hair, they pushed forward and suspended J.M.#1 for three days and erroneously, as well as purposefully, sanctioned J.M.#1 outside the perimeters of the school's code of conduct, by charging him with possession of a weapon – which is inconsistent with the purported code of conduct grading offenses.

49.    Thus, J.M.#1 was incorrectly charged and suspended based primarily on an erroneous imposition of punishment that does not equate to the listed offenses promulgated in the school's code of conduct, Hence, the sanction and charge of possession of weapon is inappropriate, disproportionate and

altogether unconstitutional.

50.    Furthermore, the Defendant's are clearly aware of Pennsylvania,'s Legislation governing the practices of suspensions of "Special Education and I.E.P Student's," wherein, certain safeguards and cautionary measures must be met before such student's faces suspensions or expulsion, not limited to, but including the safeguard of a due process hearing. Yet, the Defendant's ignored such safeguards and willfully and deliberately suspended J.M.#1 to the contrary.

51.    While the Defendant's David Clark, Janita Robinson, and Ms. Ferguson, where aware of such discrepancies, they did absolutely nothing to modify, alter, or otherwise correct the alleged charge/offense within the proper scope of the grading offenses.

52.    In addition, Dr. Clark was placed on direct notice of this incident and the fact that J.M.#1 was erroneously suspended and that there was an error with the grading of the offense which remains outside the perimeters of the code of conduct. At a meeting held on November 6th,2017, Clark state that he would correct the matter, yet he failed to do so, the Plaintiff's also forwarded a complaint requesting that Clark correct the offense, and again, he failed to do so. [2]

---

2  Dr. Clark , Principal Robinson, Principal Mills and George Regals, among other staff  was served with two

53.    However, in the inter-realm, J.M.#1 school disciplinary records reflects an erroneous "possession of a weapon" charge in which he never possessed. Moreover, such a depiction is an assassination to his reputation and character.

54.    In addition to current suspension, J.M.#1 was suspended on various occasions without valid cause or justification and contrary to policy.

55.    Likewise J.M.#2 was suspended on various occasions without valid cause or justification and contrary to policy and simply because of him being bullied.

56.    On October 24th, 2017, J.M. #2 was assaulted by another student was seen by the nurse and issued ice for a bruised eye.

## Count Eleven

### *Discriminatory Deprivation of School Trip*

57.    The Defendant's Dr. David Clark and Chester Community Charter School Board and Administration, Jahnita Robinson, Principal Mills, Ms. Fay and Ms. Ferguson willfully deprivation of a school trip to the Philadelphia Zoo, without valid cause or valid justification.

58.    On 10/3/17, the School deprived both, J.M.#1 and J.M.# 2 of a school trip to the Philadelphia Zoo in a discriminatory fashion.

59.    Prior to the above date, J.M#1's teacher "Miss Fay" contacted the Plaintiff

---

separate complaint detailing the wrongful suspensions and the irregular offense of possession of a weapons charge, but each individual mentioned herein, elected to ignore the seriousness and severity of complaint and the complications of the erroneous imposition of an offense that does not fit spectrum of the alleged incident.

was contacted by J.M#1's teacher Ms. Fay, and informed he that J.M.#1 was behaving well and progressing in his academics.

60.     However, the Plaintiff received another phone call from Miss Fay later in the week, in which she expressed that J.M#1's would not be going on the school trip in light of his behavior.

61.     Subsequently, J.M.#1 "Pop-Pop" *e.g.,* "Grandfather" contacted Miss Fay to discuss the matter, and was rudely told by Miss Fay that "No J.M.#1 is not going on the trip, and that his "Pop-Pop" is not his guardian and therefore, she need not discuss anything with him – point blank end of story click- click (phone hung up).

62.     At this point, Mr. Brown, a/k/a "Pop-Pop," contacted the Principal Robinson, and informed her of what had just transpired and requested that Robinson explain the situation concerning J.M.#1's behavior and why he was not permitted to go on the trip.

63.     Miss Robinson stated that "certain" students would not be able to go on the trip if they could not establish good behavior prior to the trip and that the "Word" "*Zoo*" is written on these students desks, and that in order to meet the criteria for the trip, the "word" would have to been colored in by the time of the trip.

64.     In other words, each letter of the word zoo must be colored in from day to day, which would reflect or give indications that a particular student is progressing well in their behavior – suitable enough to go on the trip.

65.     Miss Robinson, further relayed this program was designed for only selective students with behavior problems and that the school is under staffed to the degree that they cannot keep tabs or watch on these "type" of students, and thereby, stereotyping and profiling a certain class of children who does not fit the criteria or description as orchestrated and inferred by the Defendant's.

66.     Nevertheless, the Plaintiff was informed that J.M.#1 was doing well and that he had exhibited good conduct to the point that a number of the letters were colored in, but on trip day, and without the Plaintiff's knowledge, J.M#1 was hampered from attending the trip. In like manner, his brother J.M.#2 was not permitted to attend as well. (Without explanation).

67.     The Plaintiff was never informed on these circumstances until days later - when the two boys informed the Plaintiff that they were not permitted to go on the trip.

68.     There was never any reasons offered as to why J. M.#2 was not permitted on the trip. Yet, in all respects, neither child has any behavioral problems, nor was there ever any incidents or underlying circumstances that

could ever suggest that the McMillan boys have aggressive behavioral problems, in fact, evidence shows that since they were allowed admission to the school, they have been bullied and picked on from every avenue, not limited to, but including teachers and staff members.

69.    Dr. David Clark was placed on notice of this incident through a written complaints and verbally at a meeting held on November 6th, 2017, yet Clark elected not to correct or intervene in the matter.

### Count Twelve
### Unlawful Detention J.M.#1 And J.M.#2 On Four Separate Occasions

70.    The Defendant's Dr. David Clark and Chester Community Charter School Board and Administration, Dr. Barrows, Jahnita Robinson, Principal Mills, Ms. Fay, Ms. Ferguson and other unknown school personnel unlawful detained both J.M.#1 and J.M.#2 on four separate occasions with out the Plaintiff's knowledge or consent.

71.    On September 18th, 2017 the school bus arrived at Plaintiff's home at approximately 3:20 Pm, containing one of two of her children, and as J.M.#1 stepped off the bus, the bus driver immediately closed the door and swiftly took off without explanation, leaving no room for Plaintiff to inquire as to the whereabouts of her other child J.M.#2.

72.    At that point, Plaintiff's other grandson (J.M.#1) was upset and crying

"stating they left my brother."    In the same token the Plaintiff was literally baffled as to the whereabouts, welfare and safety of her child, at which point the Plaintiff contacted the school on approximately six consecutive occasions and was not successful in getting through to anyone who could assist in locating her child. She left several messages with Principal Robinson.

73.    The Plaintiff continued to place calls to the school and was not able to reach any one, except for the front desk personnel.

74.    Thereafter, Plaintiff was contacted the transportation department and relayed the information to personnel of the that department, but yet still no indications as to the whereabouts of her child.  Accordingly,  the Plaintiff was compelled to contact the local authorities to assist in the search. In addition, phone calls were being made to the school and transportation department by Plaintiff's fiancee.

75.    Eventually, he received a call back from Principle Robinson, who was updated and informed on the subject, in which she indicated that she would employ phone additional calls in efforts of locating J.M.#2. Subsequently, Plaintiff's fiancee, was able to get a hold of "Carla" of Durham Transportation Department who was made abreast of the situation, she likewise stated that she would place calls to determine the whereabouts of J.M.#2 .

76.    Thereafter, Principle Robinson, returned information that Plaintiff's child was finally located and that he had been authorized to go to the rest room, just prior to boarding the bus. ( Nevertheless, the bus driver left him behind).

77.    Again, it is highly disturbing to know that safeguards and safety measures are not being accorded to my children, and possibly multitudes of other children similarly situated in Chester Charter Schools throughout the region.

78.    Fortunately, the Plaintiff's child was located, however, he did not arrive home in accordance with the Plaintiff's day to day expectations at 3:00 Pm, yet to the contrary he was returned home after 5:00 Pm.

79.    This is not an isolated incident, but a recurrent one, on the following day September 19th 2017 the very same circumstances befell J.M.#1, he also arrived home after 5:00 Pm.

80.    In previous times, both J.M.#1 and J.M.#2 arrived home after 5:00 pm., and were picked up at nine and 10 o'clock am.

## Count Thirteen
### Failure to Intervene and Prevent Bullying

81. The Defendant's Dr. David Clark and Chester Community Charter School Board and Administration, Jahnita Robinson and Ms. Ferguson and Ms. is charged with the knowing failure to intervene in the continued "bullying" of

both J.M.#1 And J.M.#2 McMillan and the maintenance unconstitutional bullying polices,customs and regulation.

82.    In 2017, J.M.#2 was bullied for an extended period of time by a student nominated hereinafter, as (J), who beat him all about the face and body. However, when J.M.#2 attempted to relay the beating to his teacher Ms. Fay, he was told to sit down and keep quiet, but in the same instance Fay reported that both (J) and J.M.#2 was engaged in fighting. Yet, in reality, J.M.#2 was not fighting, he was being bullied and the bullying continued to be bullied by (J) even after having meetings and conference (J's) parent, he was bullied and assaulted by (J) and the school failed t protect him from sch abuse.

83.    Even though the Plaintiff requested a safety plan and separation of the two boy, the school attempted to sway the Plaintiff in having J.M.#2 removed to another class, as a sly method of depicting J.M.#2 as the aggressive perpetrator, when in fact, J.M.#2 was never the aggressor nor did he ever bully anyone. It is also noted that on frequent occasion wherein, J.M.#2 was being bullied in and out of the class-room, he would immediately alert his teacher by raising his hand or by attempting to confide in his teacher or other staff, but he was told to sit down, don't speak or was ignored.  Simply put, because the Plaintiff chose not to consent to a removal of her child to another setting, (J.)

was allow to continue to target, bully and assault  to J.M.#2 the end of the school year.

84.    While Dr. Clark, Principal Robinson, Ms. Fay and the school's administration received first hand knowledge that (J.) was targeting and bullying J.M.#2, they failed to implement a separation as precautionary measures, but recklessly and negligently continued to permit both parties to remain in the same class with animosity.

85.    J.M.#2 was assaulted by (J.) on five separate occasions and during those times he was not furnished medical treatment pursuant to his injuries. On many occasions when J.M.#2 tried to inform Ms. Fay of the assaults, harassment and bullying, she deliberately refused to intervene, telling  J.M.#2 to not to speak, raise his hand or sit down etc., or yet, being informed of the assaults and bullying and ignored it.

86.    Such acts and omissions compromises Pennsylvania's No Bullying Legislation, and the school's very own promulgated policies, to which the Defendant's has blatantly ratified their very own unconstitutional procedures, Polices and regulations in the unconstitutional failure adhere to promulgated legislation relative to no-bullying polices for the State of Pennsylvania, and by the unconstitutional failure to adequately intervene in protecting  J.M.#1 and

J.M.#2, from being assaulted and bullied on the school's premises.

87.    Further, the Defendant's breach a duty of reasonable care to J.M.#1 and J.M.#2 by the knowing failure to implement precautionary measures and the appropriate safety plan and separation, even where the Plaintiff's had respectfully requested the same, but was virtually ignored.

88.    Dr. David Clark and Chester Community Chart School is of the unconstitutional failure to have adequately train and supervise it's subordinate's in this matter and knowing allowed J.M.#1 and J.M.#2 to continue to be bullied and assaulted. Accordingly, the Defendant's actions are in direct violation of the Plaintiff's first amendment right to redress of grievances, fifth and 14th amendment rights to due process and equal protection of the law.

## Count Fourteen
### Inadequate Education and Misappropriation of Government Funding

89.    The Defendant's Dr. David Clark, Chester Community Charter School Board and Administration, Ms. Jahnita Robinson, George Regals, Ms. Shannon Fay, Ms. Ruth, Ms. Devy, Daniell Wijtyk, Jessica Conley, Ms. Ferguson, unanimously continues to fail to condition and educate J.M#1 and J.M.#2 in accordance with it's intermediate and special educational program, mismanagement and misappropriation of state federal funding delegated

towards the aforesaid programs.

90.    The Defendant's Dr. David Clark, Chester Community Charter School Board and Administration receives state and federal revenue which is supposed to utilized and delegated towards the advancement and enhancements special education students  (Such as J.M.  #1and #2 ),  but, yet the school is of the unconstitutional failure to appropriate such funding in the manner originally intended and designed.

91. While (J.M.#2), has attended Chester Community Charter School for approximately a year and a half, the educational resources applied to his special educational needs are exceedingly poor, he has advanced morose with home schooling than the educational system offered at Chester Community Charter School.

92.    Clearly, he has not progressed on a second grade level to any degree. His basic education level appears stagnant and between Kenny garden and first-grade. Even though, (J.M.#1 and #2) are both especial education student under the Pennsylvania designated Intermediate Educational Program., each child is uniquely different in terms of (I.Q.) *e.g.*, "Intellectual Qualities," and psychological characteristics, therefore, each child's educational teachings and programming must be uniquely and distinctively applied to the individual

needs.

93. Generally, the overall problem with the education system of Chester Charter School is that student's such as (J.M.#1 and #2), that the assigned educator's are neglecting to put in the appropriate amount of time with such students on basic subjects such as math spelling or writing to safeguard and insure that the student are not educationally stagnated before moving forward. All too often, (J.M.#1 and #2) arrives home with "homework" as thick as a magazine or a book, in which it appears that the work is designed for students at a third or fourth grade level, and the fact that the compilations of work sent home being thick as a book is an strenuous overkill on both the minds of the parent and student.

94.     Furthermore, in light of the persistent distribution of overburden homework being supplied to students and parents in stacks, appears to be a shift off or trade off to the parents to educate their children at home, rather than the school and it's designated educators.

95.     Although, the Plaintiff along with (J.M.#1 and #2) has attended three consecutive (I.E.P.) meetings *e.g.*, special education progress meetings, the Plaintiff found that the Defendant's Dr. David Clark, Chester Community Charter School Board and Administration, Ms. Jahnita Robinson, George

Regals, Ms. Shannon Fay, Ms. Ruth, Ms. Devy, Daniell Wijtyk, Jessica Conley, Ms. Ferguson, failed to condition, advance or otherwise educate both (J.M.#1 and #2) in accordance with the available formalities of the (I.E.P.) system, such as speech therapy, identifying and pronunciation of three part words, phases and syllables, basic math, reading, writing and spelling.

96.    Critically, (J.M.#2) is only allotted 20 minutes or less for speech therapy at twice a week, and so far as the other fundamentals described herein, are concerned, a mere by the assigned 20  minutes or less of services are provided by the assigned (I.E.P. - Teacher). Even though the Plaintiff has been requesting for more than a year, that addition time be expended towards the framework of the basic education, ***inter alia,*** the speech therapy, however, to the contrary, the defendant's failed to adhere to such request which are mandated by the Legislation and Department of Education. [3]

97.    Hitherto, both (J.M.#1 and #2), are lagging and virtually dormant, where special educational resources are available, but and not  being imparted to them. Hence, the Plaintiff's children are being deprived of the full spectrum of equal educational opportunity without valid cause, and in the very same process the children are being deprived equal protection of the law and the

---

3    The Defendant's offered a small group  learning setting, but the covert aspects of this guise is to basically admit that the two children possesses both psychological and behavioral disabilities requiring segregation from non-psycho-behavioral children, when in fact, the have no such behavioral defects, other than being bullied teased, and picked on by staff and students alike.

right to both, due process and substantive due process.

## Count Fifteen
### Discriminatory Deprivation of Admissions To Chester Community Charter School

98.    In 2016, the Defendant's Dr. David Clark, Chester Community Charter School Board of Directors, Administration, Admissions Director, Admissions Personnel, willfully and, deliberately exercised and observed unconstitutional procedures, policies, customs and regulations and discriminatory practices in the unconstitutional denial of the admission of (J.M #1 and #2) to Chester Community Charter School – East Campus.

99.    In 2016, the Plaintiff Erma McMillan sought admission to Chester Community Charter School (East Campus) on behalf of her two minor children (J.M #1 and #2) and was unjustly denied by the Admissions Director, who erroneously exclaimed that the Plaintiff did not possess the necessary documents for admission to the school according to its procedures, policies and regulations.

100.    However, in reality, the Plaintiff produced the appropriate documentation as required under the school's administrations policies, and whats more, is the fact that the school had in it's possession a file, containing the very same documentation produced in the previous year for (J.M. #2) who

was already a student at the School's West-side Campus. This information was relayed to the Admissions Director and readily available, but she willfully refused to check the record and prominently and impolitely indicated that neither child were entitled to admission based on the aforementioned documentation on file nor those offered at that time.

101.    Meanwhile, the Plaintiff's reiterated to the Director of Admissions that the documentation was sufficient and meets the requisites for admissions and that the very same documentation was suitable for the previous admission of (J.M.#2) at the West-side Campus. In retrospect the Plaintiff made approximately three trips to the school retrieving additional documentation in attempt to enroll both, (J.M#1and2) at the East-side Campus and was persistently denied without valid cause or justifiable reasons being rendered by the Admissions Director.

102.    Subsequently, the Plaintiff's contacted the Department of Education detailing the information and how the school were being persistent in denying her children access to the school without valid cause. After identifying each piece of data offered to the school, the Department of Education concluded that the documentation was proper for admission to Chester Community Chart School and that there were no compelling reason for any denial of admission.

103.    The Department also indicated that they would contact the school to determine why the school refuses to accept such documentation, where the (J.M.#2) was already a student at the West-side Campus.

104.    In the finality of the matter, it was not until approximately two moths thereafter that the school permitted both children admission to the school after hearing from the Department of Education that the Plaintiff's documents meets the requisition for admissions.

105.    In the same token, the Plaintiff and children was handled in discriminatory manner and deprived of their fifth amendment right to due process, eighth amendment right to equal protection and fourteenth amendment right to substantive due process, and to a free an unbridgeable education.

### Count Sixteen
### Breach of Duty and Office In The Knowing Failure To Intervene In Orchestrating A Safe Environment at Chester Community Charter School

106.    The Defendant's Pennsylvania Department of Education and Carol Cuntz, willfully, negligently and recklessly exercised and maintains unconstitutional procedures, policies, customs and regulations relative to the department's continuing breach of duty and obligation to intervene, deter, or otherwise exercise a duty of reasonable care of special education students, (such

as J.M.#1 and J.M.#2) who has been abused and victimized by educators within the Commonwealth of Pennsylvania, specifically at Chester Community Charter School after being supplied with direct information that (J.M.#1), was brutalized, assaulted, by a "School Dean" and had his arm slammed in a door and thereafter, he was severely injured where a mouse trap in plain view in the Principal's Office clamped down on his finger.

107.    Shortly after, (J.M.#1) was assaulted by the Dean at Chester Community Charter School, the Plaintiff contacted the Department of Education regarded the instant matter and was referred to the Defendant Carol Cutz, in which the Plaintiff relayed detailed information to Cutz, who is responsible for organizing delegating proposals and negotiable prospects for safe-school environments through the Commonwealth of Pennsylvania.

108.    Upon the information received by Cutz, she expressed that she would look into the matter and contact the school for any possible prospects of creating a safe-school environment.

109.    As days proceeded, the Plaintiff's heard nothing from Cuntz or the Department of Education and decided to follow-up with the initial phone conversation. However, Cuntz was not available, therefore, the Plaintiff left messages for a rerun phone call.

110.    Again,  as days proceeded, the Plaintiff's heard nothing from Cuntz or

the Department of Education , this continued for approximately three  weeks or

more, until Cuntz inadvertently contacted the Plaintiff looking for another

person, nonetheless, since Cuntz had Plaintiff on the line, the Plaintiff inquired

about any progressive steps Cuntz was making in reference to the instant

assault.

111.    Cuntz  indicated that she contacted the office of Dr. David Clark to no

avail and that she had no updated information to furnish the Plaintiff with and

indicated that she would continue to contact the school and that she would get

back to the Plaintiff. However, Cuntz again failed to get back with the Plaintiff

within a reasonable time-frame, and again, the Plaintiff  was back at leaving

messages to no avail – until finally Cuntz returned a phone call to the Plaintiff

on 12/12 /2017, simply stating that the Plaintiff should get her two children

back in Chester Community Charter School.  In other words, Cuntz inclinations

was that the Plaintiff should compromise and frustrate the tokens of her dignity

and morale by place her children in jeopardy and in harms way.

112.    When the Plaintiff inquired of Cuntz as to what she learned from

contacting the school regarding the matter, Cuntz seemed baffled and without

answer, Cuntz had no answer, nor provided any. Therefore, the Plaintiff inquired further, and asked Cuntz who she spoke to at the school and she indicated Principle Robinson, and supposedly other staff, but when the Plaintiff asked for details, Cuntz shut-down and reiterated that the Plaintiff should send her children back to the school without explanation or consideration as to the events that caused the withdrawal from the outset.

113.    At this point, the Plaintiff requested that Cuntz provide her with a finding or summary of her communications with the school, Cuntz refused, simply because she had none to offer, nor did she provide any manner of Intel regarding an investigation as to safeguard against the information provided to her about Plaintiff's child who was: (1) brutally tossed about a class-room daubed as the "peace-room," (2) beat about the head and body with a hard pillow, (3) pushed and hit about the body, and slammed into desks and waste baskets, (4) his arm slammed in a door and finally, (5) a live mouse trap clammed down on his finger all in a simultaneous formation, Cuntz and the Department of Education, ignored by-pass sch critical elements only to simply state that Plaintiff should place her children in the line of fire.

114.    Throughout the entire phone conversation, Cuntz remained exceedingly vague, incommunicado and highly dogmatic in her desire that the Plaintiff

return her children back to Chester Community Charter School.

115.    In hindsight, it is clear that Cuntz and the Department of Education are depicted as public advocate's for the decency and propriety of school age children throughout the populace of the Commonwealth, who seeks the enjoyment and benefits of a proper education free from the enmity of hostile relations and  environments. Therefore, it is highly incumbent upon the Department of Education and it's acting officers to provide genuine assistance in safeguarding against such hostile school environments and educator's who deliberately exercise differential and unorthodox treatment to students against the Departments policies, customs and regulations and the constitutional rights of Commonwealth student's in general.

116.    The Department of Education along with the Defendant's Carol Cuntz, exercised reckless disregard, breach of office and duty owed to the Plaintiff's by observing and exercising unconstitutional procedures, policies, customs and regulations in the callous disregard and failure to intervene by employ corrective measures and safeguarding against the intense hostile environment at Chester Community Charter School.

117.    The Department of Education and Carlo Cuntz were called upon to perform operational duties within the sphere  of  their obligations and duties as

public officials and advocate's for "Safe School's," and for children and students such as (J.M.#1 and #2), who has suffered constant bullying, assaults and serious   injuries due to an unsafe environment, but the Defendant's neglected and breach such duties, despite having first hand knowledge that a child, namely, (J.M.#1) was brutalized assaulted and manhandled by a school official.

118.    Even though Cuntz indicated that she would be contacting her superior's in seeking a proposed resolution for creating a "Safe Environment" at Chester Community Charter School, yet, to date neither Cuntz nor the Department has reached out the Plaintiff.

119.    Accordingly, both Cuntz and the Dept. of Education acts and omissions are discriminatory in nature and a direct violation of the Plaintiff  to 5th and 14th due process rights and the right to equal protection of the law.

120.    Moreover, the Department of Education is of the unconstitutional failure to adequately train and supervise it's subordinate's, not limited to, but including the Defendant "Carol Cuntz," who holds the title of Director for "Safe Schools," but, willfully and deliberately refused to provide public services where she was informed of the unsafe environment  that (J.M.#1 and J.M.) are force to experience and the bodily injuries and harm in which they incurred as

a result of such pathetic conditions.

121.    The Department of Education and Cunz breached a duty of reasonable care owed to the Plaintiff and (J.M.-1and 2), and exercised discriminatory practices by acting with reckless and callous disregard in the differential and prejudicial election to not render services the Plaintiff and her children qualify for under the laws of the State of Pennsylvania.

### Count Seventeen
### Breach of Duty and Office In The Knowing Failure To Intervene In Assault of J.M.#1

122.    The Defendant's City of Chester and Chester's Police Department willfully, negligently and recklessly exercised and maintains unconstitutional procedures, policies, customs and regulations relative to the department's discriminatory practices in the unconstitutional failure to intervene, deter, or otherwise exercise a duty of reasonable care for children or citizens within the City of Chester such as J.M.#1), who was been abused and victimized by educators within the region of Chester, Pennsylvania.

123.    On or about November 8th, 2017, the Plaintiff contacted Chester Police Department in reference to (J.M.#1) being assaulted and brutalized by a Dean at Chester Community Chester Charter School.

124.    Upon arrival of the officer's at the Plaintiff's home, (J.M.#1) was

examined and questioned in regards to the incident. At that time, (J.M.#1), relayed that he was brutalized by "(Ms. Sudler)" the school's Dean and therewith, he displayed a blood clot finger, and various portions of the body that he indicated was hurting from the beating.

125.    Upon question and examination, the Plaintiff was informed by the officer's that a juvenile officer would be getting in touch with the Plaintiff shortly thereafter, but no such officer ever did, and there was no further communication or investigations meted out by the department.

126.    The City of Chester and it's Police Department is of the unconstitutional failure to adequately train and supervise it's subordinate's who unjustly failed to investigate the elements of the brutal beating of (J.M.#1), failed to follow-up on the initial information supplied to them from (J.M.#1), and failed to ensure that the "Juvenile" officer was commissioned to provided assistance and perform his routine duties as mandated.

127.    Moreover, the City of Chester, it's Police Department and it's Subordinate's breached a duty of reasonable care to the Plaintiff's and such acts and omissions are discriminatory, prejudice and bias, depriving the Plaintiff's of the first amendment right to redress of grievances, fifth and fourteenth amendment to due process and equal protection of the law.

## Count Eighteen
### Breach of Duty and Office In The Knowing Failure To Intervene In Assault of J.M.#1

128.    The Defendant's Pennsylvania Department of Human Service and Children and Youth Services Delaware County is charged with exercising and maintaining unconstitutional procedures, policies, customs and regulations governing to the department's discriminatory practices in the unconstitutional failure to intervene, deter, or otherwise exercise a duty of reasonable care of special education students who are abused or victimized by educators throughout the the Commonwealth of Pennsylvania and Delaware County.

129.    The Department of Human Services and (CYS of Delaware County) were contacted by the Stat Police execute serviceable duties within the spectrum of their obligatory tariffs as public officials and advocate's for the general welfare and safety children and students such as (J.M.#1 and #2), who has suffered constant bullying, assaults and serious injuries due to an unsafe environment at Chester Community Charter School, and by the willful misconduct of adult educator's. Nevertheless, the Defendant's neglected and breach such duties owed to the Plaintiff's pursuant Pennsylvania Child Protection Laws, despite having first hand knowledge that a child, namely,

(J.M.#1) was brutalized assaulted and manhandled by a school official.

130.    After explaining the incident the Stat Police, personnel at that agency indicated that thy would contact the Department of Human Services and Children and Youth Services of Delaware County.

131.    Subsequently, Children and Youth Services, hereinafter, (CYS), contacted the Plaintiff in reference to the information supplied to them by the State Police regarding (J.M.#1) being assaulted and brutalized by a Dean at Chester Community Chester Charter School.

132.    At that time, the Plaintiff reiterated how (J.M.#1) was brutally handled by "(Ms. Sudler)" Chester Community Charter School's Dean and how he ended up with multiple injuries to various portions of the body that he indicated was hurting from the aforementioned beating.

Based upon the phone conversation with (CYS), personnel from that Department stated that they would visit the school with regards to opening an investigation into the incident.

132.    Upon visiting the school, (CYS) arrived at the Plaintiff's home unannounced, requesting to interview J.M.#1 and desirous to see J.M.#2, in which the Plaintiff complied.

133.    (CYS) questioned and examined J.M.#1 in which he relayed the very

same specifics of the brutal assault and beating he received by school Dean Bernice Sudler and showed various portions of his body that were affected and a blood- clot finger damaged by a mouse trap at the school and his arm which was slammed in a door by Sudler.

134.    Upon question and examination, the Plaintiff was informed by (CYS), that they don't currently have any findings as to the over all incident and that they would get back to the Plaintiff's in regards to the same.

135.    When the Plaintiff asked (CYS), details as the visit to the school and who (CYS) spoke to at that time, however, (CYS) was hush-hush and totally vague and basically revealed that thy never actually conducted a thorough or in-depth investigation.

136.    Within a two week period the Plaintiff received a phone call from (CYS) indicating that they are closing out the case as unfounded because they didn't observe any busies on J.M.#1. Yet in actuality, (CYS) observed a bruised and blood-clot finger and other injures t o J.M.#1's body, as he pointed them out to (CYS),  and on 1/16/18 (CYS) forwarded a basic standardized correspondence to the Plaintiff's indicating that the case was closed out - without reflecting specific  reasons or details for such termination.

137.    Notably, Chester Police also observed such busies and noted the same,

notwithstanding, hospital records reflects the same.

138.     In pursuit of the purported investigation meted out by (CYS),

negligently and recklessly failed to pursue crucial leads and evidence which

demonstrates that J.M.#1 as brutalize in the devastating manner as he

described:  (1) CYS failed to review or analyze video footage  relative to this

matter. (2) Failed to interview witnesses such as Ms. Smith, who was present

during the incident . (3) Failed to interview Bernice Sudler. (4) Failed to

Examine both school medical files and hospital medical records, among other

crucial elements.

139.     The Department of Human services and CYS  breached a duty of

reasonable care owed to the Plaintiff and (J.M.-1and 2), and exercised

discriminatory practices by acting with reckless and callous disregard in the

differential and prejudicial election  in not rending the appropriate services that

the Plaintiff and her children qualify for under the laws of the State of

Pennsylvania.

140.     The Defendant's further beach a duty of reasonable care owed to the

Plaintiff's by the willful and deliberate failure to intervene by neglecting to

examine critical evidence that demonstrates that the Defendant Bernice Sudler

did in fact brutalize and beat (J.M.#1) and slammed his arm in a door, and that

a mouse trap in the principal's office slammed down on his finger causing visible and significant injuries thereto. The Defendant's willfully and with reckless disregard to the welfare and safety of both (J.M.#1 and #2), by the unconstitutional failure to conduct a though investigation as to the complaint and information rendered to the Defendant.

141.    The Department of Education breached a duty of reasonable care to the Plaintiff's by failure to adequately train it's subordinates and superiors who supervised the person and or person's who handled the Plaintiff's complaint, but unjustly closed the case out without pursuing available evidence and witnesses.

142.    The acts and omissions of the Defendant's are discriminatory in nature and a direct violation of thee Plaintiff's first amendment right to redress of grievances, and fifth and 14th amendment rights to due process and equal protection of the law.

### *Statement of Events Leading Up To The Current Beating*

143.    On 11/8/17, in the earlier portion of that day, J.M.#1 commenced his morning with his regularly scheduled classes, and at some point he went to the rest room and was met by a student in which he termed as a big bully, he contends that while he tried to enter into the rest room, the bully stood on the other side the rest room door and would not let him enter the rest room, and

eventually as he managed to get pass the bully, the bully kicked him and as he was headed to the stall, the bully pursued and hit him in the right arm. Jasir struck back, and then the bully hit him again as he made it back outside the rest room, where he states that he went to inform personnel at the office and spoke to an individual by name of "Ms. Gini" purportedly a school principal of the incident, wherein, he was told by that person that he was lying about the bully kicking and hitting him.

144.   Thereafter, he was sent back to class and informed his teacher of the incident and was told that he was lying just the same.

145.   Shortly thereafter, JM.#1's teacher Ms. Ferguson sent him to a cubical located in the hall-way, to retrieve his book bag,   while Ms. Fay who is J.M.#1's IEP teacher, walked with him and four other students, some how a male-student   got ahead of Fay and began to tease and taunt J.M.#1 and proceeded to JM.#1's cubical, wherein J.M.#1 Jumped out from his cubicle and scared the student and pushed him, at which point Ms. Fay asked why did J.M.#1 scare the other student and push him, and when he explained to Fay that the student was taunting him, Fay stated that he was lying.  Moreover, it was said that at some point J.M.#1 went to the rest room again and ended up putting tissue on the floors and a female sanitation worker alerted Sudler to the tissue,

in which Sudler asked J.M#1 to dispose of the same, in which he complied without incident.

146.    Subsequently, J.M.#1 ended up in the peace-room, presumably for that incident, and as his session was accomplished, J.M.#1 was headed back to his class and was intercepted and accosted by Ms. Sudler who abruptly stated to J.M.#1 "Oh no, your not going to another class-room to tear up and to be destructive." Jasir replied, "I'm not going to any class to be destructive, I'm going to my class to do my work." Then, without benefit, Sudler indicated that she was taking him back to the peace-room, but instead, she took J.M.#1 to the office without  legitimate cause or reasoning, and stated that the peace-room teacher "Ms. Smith" was not available, but within minutes, Smith was said to have mysteriously appear - already inside of the peace-room.

147.    When J.M.#1 learned that he had been tricked, duped or deceived, he requested to return to his class and attempted to proceed back, but Sudler interfered with his inclinations, wishes and desires, Sudler began blocking his path and impeding his movement. The more J.M.#1 insisted to return to class, the more aggravated Sudler became, to the point of throwing objects at him (pillows), hitting and pushing him and recklessly tossing him about the room in the presence of Ms. Smith, which morphed into the instant assault and abuse.

147.   There is a repetitive history of the school allowing both J.M#1 and his bother J.M.#, to be bullied, assaulted, and abused by staff and students alike.

### *Relief*

148.   The Plaintiff's seeks joint relief from each Defendant mentioned in this action: Compensatory and Monetary damages in the sum of   dollars for all damages and injuries inflicted upon the Plaintiff's in the following manner:

149.   Excessive Force, Assault(s) and Bullying, Physical and Mental Damages and Injuries to J.M.#1 and J.M.2, Damages and Injuries to J.M.#1's Finger and Arm, Endangering the Welfare of a Child, Deprivation and Deliberate Indifference to the Serious Medical Needs of J.M.#1 and J.M.#2, upon being Assaulted and Bullied, Failure To Act, Deter and Intervene, Failure To Adequately Train and Supervise, Breach of Public Office(s) and Duties, Breach of Procedures, Policies and Regulations, Unconstitutional Denial and Deprivation of Admission to Chester Community Charter School, Discrimination, Filing of False Reports and Disciplinary Actions,  Deprivation of the Constitutional Right of Redress of Grievances, Unlawful and Unconstitutional Detention, Unlawful Restraint, Defamation of Reputation and Charter, Negligence, Callous and Reckless Disregard, Egregious Indifference,

Mental and Emotional Distress, Continued Pain and Suffering, Mental Cruelty, Educational Male-practice, Inadequate and Lack of Education, Educational-Compensation, Misappropriation of State and Federal Educational Funding, Loss of Education and School Days, Unconstitutional Suspension(s), Discriminatory Deprivation of School Trip, Irreparable Harm and Injuries, Harassment, Damages and Amounts in Damages, Deprivation of Civil and Constitutional Rights pursuant to the 1st, 5th, and 14th, Amendments and Equal Protection Clauses, Declaratory Judgment, Cost and Filing Fees, Punitive Damages, Attorney Frees, Temporary Restraining Order, Injunctive Relief and Trial by qualified Jury.

### *Declaration*

150.    I Erma McMillan, hereby, declare that the information contained herein is true and correct to the best of my knowledge information, and belief.

Executed: *March 16th, 18*

Erma McMillan, Pro Se
249 West Mowry Street
Chester, Pa. 19013